[CERTIFIED TRANSLATION]   I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

# COMMONWEALTH OF PUERTO RICO
# COURT OF FIRST INSTANCE
# BAYAMÓN SUPERIIOR PART

RECEIVED SEP 10 2025

| WILFREDO TORRES MASS | |
|---|---|
| Plaintiff | |
| v. | RE: |
| CLÍNICA LAS AMERICAS GUAYNABO, INC. | PETITION FOR ORDER |
| Defendant | |

## COMPLAINT

**TO THE HONORABLE COURT:**

   **COMES NOW,** the plaintiff Wilfredo Torres Mass, and respectfully requests a Permanent[1] Injunction against Clínica Las Américas Guaynabo, Inc., according to the provisions of Title III of the Americans with Disabilities Act.

### I.   THE PARTIES

1. The name of the plaintiff is: Wilfredo Torres Mass. His postal address is: Development Bello Monte, Street 8 L 3, Guaynabo, PR 00969-000. His physical address is: Cond. Colinas de Bayamón, Apt. 11d, Rd. 831 Km. 2.5, Bayamón, PR 00956-0000. His telephone number is: (787) 637-3372.

2. The defendant is Clínica Las Américas Guaynabo, Inc. is a property owner and operator of the public accommodation location in dispute known as Clínica Salus Guaynabo.

### II.   ALLEGATIONS

**A. Regarding the Disability of Wilfredo Torres Mass**

3. Mister Wilfredo Torres Mass lives with a permanent physical disability caused by an incomplete paraplegia at the lumbar level L1 and L2. This neurological condition has caused a significant limitation in the motor function of his lower body, deeply affecting his ability to move. As a result, he cannot walk, run, bend down, or perform any other activities which require physical mobility without the use of support tools. Due to these limitations, he fully depends on the use of a wheelchair to move inside and outside his home. His

---

[1] The plaintiff is not requesting a preliminary or provisional injunction. The request is for the case to continue the regular process.

[CERTIFIED TRANSLATION]    I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

dependence on it is not optional or incidental, rather constant and necessary for his safety, physical stability, and functional autonomy.

4. Mister Torres Mass' disability practically impacts all the aspects of his daily life. Basic activities that many people perform without effort, such as moving through public spaces, entering a business, using a bathroom, or attending medical appointments, require in his case accessible infrastructure, prior planning, and, on occasions, the assistance of third parties. The continuing use of a wheelchair implies that any physical barrier in his environment, such as steps, inadequate ramps, or narrow hallways, represent an absolute barrier which impedes his full participation in community life. These limitations directly affect his independence, social integration, and his quality of life.

5. Due to his condition, Mr. Torres Mass is substantially limited, in comparison with the general population, on multiple important activities of everyday life. These include, but are not limited to, walking, standing, bending down, using public services, and accessing common use facilities. These restrictions comply with the criteria established by the Americans with Disabilities Act (ADA), which recognizes his condition as a protected disability through his legal rights.

   **B. Regarding Clínica Salus Guaynabo, location in dispute**

6. The property in dispute is a reasonable accommodation location known as Clínica Salus Guaynabo, located on Casa Linda Ave., Hwy 177, Development Los Filtro Suite 101, Bayamón, PR 00970-0000, whose coordinates are 18.382832840078844,-66.1239166000049.

   6.1 The defendant Clínica Las Américas Guaynabo, Inc. is the title owner of the location known as Clínica Salaus Guaynabo.
   6.2 The defendant Clínica Las Américas Guaynabo, Inc., is the operator of the location known as Clínica Salus Guaynabo.

   C. **The discriminatory experience of Wilfredo Torres Mass in Clínica Salus Guaynabo due to his disability.**

7. Mister Wilfredo Torres Mas would frequent Clínica Salus Guaynabo for the medical services provided by the facility, since he receives continuous attention which is indispensable due to his paraplegia condition at the lumbar level. Due to the complexity of his diagnosis, his health requires constant medical supervision and a structured follow up which allows him to preserve functionality within the limitations imposed by his disability. This constant medical relationship provides him a framework of attention which contributes directly to the adequate management of his neurological condition, allowing him to preserve his stability and quality of life.

8. However, in his last visit to the facilities of the clinic, on June 18, 2025, Mister Torres Mass personally faced different architectural barriers inside the establishment which difficulted his mobility, which produced a frustrating and excluding experience.

[CERTIFIED TRANSLATION]    I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

9. Due to this experience, Mister Wilfredo Torres Mass has felt deterred from returning to Clínica Salus Guaynbo, situation which has led him to not go to the location notwithstanding his interest in once again visiting during the weeks of July 2025. Mister Wilfredo Torres Mass has the intention of returning to Clínica Salus Guaynabo within the next three months, since he needs to follow up on important aspects related to his health and continue with the specialized medical attention. Notwithstanding, even considering his need, currently he feels deterred by the architectural barriers of the locations, which have negatively affected his prior experience and continue representing a significant obstacle for his return. This situation keeps him in a position of uncertainty, in which his physical wellbeing is under tension with the access difficulties he faces in the clinic. The barriers that Mister Wilfredo Torres faced were inside the Clínica Salus Guaynabo and were the following:

    9.1 Deficiencies in the mobility in the space inside the bathroom: Mister Wilfredo faced the barrier that showed deficiencies in mobility in the space inside the bathroom marked as accessible, because the available area was clearly inadequate to allow movement and placement of his wheelchair in a stable and autonomous manner. The narrowness of the area forced him to make forced turns, with limited movements and not very natural, which demanded excessive physical effort and caused continuous impact of his support equipment against the surfaces of the location. This lack of space was aggravated by the fact that the door opened to the inside, reducing even more the surface use and producing direct interference with the movement of his chair. The combination of these conditions not only impeded him from returning and position himself with normalcy, rather that it also caused him to be uncomfortable, frustration, and a sense of undignified exposure. The restriction of his ability to move constituted a direct injury to his functional independence, by depriving him from his full and autonomous use of a basic service which he should have been able to access without obstacles.

    9.2 Image 1 is a current image representation of what was mentioned above and taken by Mister Wilfredo. In image 1 the deficiency can be seen of the mobility space within the bathroom, showing that the available area was and is inadequate for the use of the wheelchair and that the door opens to the inside reduces even more the free space of the floor around the toilet:

[CERTIFIED TRANSLATION]    I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.



*Image 1*

9.3 Paper dispenser located outside the functional range of reach: Mister Wilfredo faced the barrier which presented the inadequate location of the toilet paper dispenser, installed at an excessive distance and in an elevated position regarding the toilet, which difficulted his reach from the sitting position on his wheelchair. This position forced him to incline his torso forcedly and to extend his arm laterally in an unstable movement, producing physical tension to him and compromising his stability inside the already limited space. The lack of accessibility in such a basic element not only impeded him from performing an essential action with autonomy, rather that it caused him to be uncomfortable, frustration, and a sense of undignified exposure. The deficient position of the accessory transformed an elemental need in a debilitating experience depriving him of the full and autonomous of the bathroom and causing him direct harm to his independence and personal dignity.

9.4 Image 2 is a current image representation of what was mentioned in the above paragraph and represents the barrier of the paper dispenser located outside the functional range of reach, showing how its installation in an elevated and distant position form the toilet impedes its use from the wheelchair in autonomous and accessible conditions:

[CERTIFIED TRANSLATION]   I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.



*Image 2*

    9.5 Obstruction of the mobility space due to the placement of the trashcan: Mister Wilfredo faced the barrier caused by the placement of a trashcan placed inside the bathroom stall, which reduced significantly the movement space required for the use of the wheelchair. The presence of this object invaded the area used for the approach and transfer toward the toilet, forcing him to make forced and repetitive movements to accommodate his assistance equipment in a restricted space. This obstruction generated constant impacts between the wheelchair and the trashcan, making him uncomfortable, physical exhaustion, and an experience marked by frustration. The direct interference of a mobile element in a space that should have been clear limited his functional autonomy and impeded him from using the bathroom fully and with dignity, causing him a clear injury to his independence in an environment that should have ensured accessibility.

    9.6 Image 3 is a image representation of what is stated in the preceding paragraph and represents the barrier obstructing the mobility space by the placement of a trashcan inside the stall, which reduces the area used for turns and transfers and limits the full use of the toilet for accessibility conditions:

[CERTIFIED TRANSLATION]    I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.



Image 3

9.7 Mirrors installed at height above accessibility: Mister Wilfredo faced the barrier of the installation of the mirror at an excessive height, which impeded its adequate use from the sitting position in his wheelchair. The placement of the mirror, placed above the accessible visual range, impeded him from looking at himself clearly while he was carrying out basic activities of personal hygiene, such as washing his hands, or getting himself together. This configuration forced him into uncomfortable positions and into an exclusion experience inside the bathroom. the improper height of the mirror transformed an essential personal care and hygiene element into an obstacle that limited his autonomy and harmed his dignity, by denying him the possibility of fully completing in equal conditions a basic activity in the bathroom area.

9.8 Soap and drying accessories located outside his range of reach: Mister Wilfredo identified the barrier caused by the improper placement of the soap dispenser and hand dryer, placed at height and distance that exceeded the functional range of his reach from his wheelchair. This placement forced him to extend his arm laterally and upwards, without the necessary support to maintain stability of his already reduced environment The difficulty of accessing these essential elements impeded him from completing autonomously the washing and drying process of his hands, producing him to be uncomfortable, physical wear, and a clear sensation of

[CERTIFIED TRANSLATION]   I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

exclusion in the bathroom. The lack of accessibility in these accessories represented a direct injury to his dignity, by showing that the space did not ensure adequate conditions to perform a basic hygiene activity.

9.9 Image 4 is an image representation of what was mentioned in the preceding paragraph and represents the barriers consisting in mirrors installed at a height beyond accessibility and with the soap and dryer accessories located outside the reach, showing that both elements were placed on positions that impede its use from the wheelchair from conditions of autonomy and accessibility:



Image 4

9.10 The soap dispenser outside the accessibility range of reach: Mister Torres Mass faced a significant difficulty when attempting to access the bathroom soap dispenser, which was placed at a height higher than the recommended limit for accessibility. The norm establishes that these types of elements should be placed within lateral reach from a sitting position, not exceeding 48 inches over the floor. The elevated placement of the dispenser forced Mister Torres to stretch upwards, compromising his physical stability and producing an unnecessary risk in a zone where safety should prevail. This uncomfortable and dangerous effort contributed to him feeling ignored within the space, feeding a sensation of frustration and vulnerability. The lack of accessibility in an element as essential as soap strengthened his perception of not being treated equally during the visit.

[CERTIFIED TRANSLATION]    I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

10  In order to eliminate the barriers that currently impede that Wilfredo Torres Mass access independently and safely Clínica Salus Guaynabo, specific modification should be performed: To eliminate the deficiencies in the mobility space within the bathroom, it is essential to resize the stall in order to ensure a free area of at least 1.50 meters in diameter that allows full turning of a wheelchair. A supplemental measure is to substitute the existing door for one that opens outward or a sliding door, avoiding then for the movement of the door to interfere with the interior space. These accommodations reinstate function in the stall and ensure entry, positioning, and closing of the door to be done with full autonomy. Regarding the accessory elements, the toilet paper dispenser needs to be relocated, the soap dispensers, and hand dryers within the functional reach, i.e., at a height no greater than 48 inches (1.22 meters) and a position that does not demand forced extensions or bending down form the sitting position. Likewise, the mirrors should be installed with a lower edge at a maximum height of 40 inches (1.02 meters) over the floor, thus ensuring its effective use from the wheelchair. These corrections ensure that each accessory complies with the foreseen function and can be used without physical restrictions. Finally, the elimination of moving objects which invade the transfer area, such as the placement of trashcans inside the stall, constitute an immediate and necessary action. These should be relocated to common areas, outside the movement space, avoiding them from interfering with the access to the toilet. With these measures, accessibility is restored to the bathroom altogether, unnecessary physical effort is eliminated and it is guaranteed that use of the bathroom will be complete, autonomous, and in conditions of dignity for Mister Wilfredo.

11  Wilfredo Torres Mass will be affected in the future by the barriers existing in Clínica Salus Guaynabo since he has concrete plans to visit the clinic in the next three months, motivated to enjoy the offers it has and to participate in the social environment it represents. His interests is legitimate and continuing, but the current conditions force him to postpone said visits due to safety and dignity concerns.

12  Wilfredo Torres Mass feels deterred from visiting Clínica Salus Guaynabo due to the architectural barriers existing there. Notwithstanding, he has the intention of returning to this establishment once said barriers have been eliminated. Only when all the barriers related to his kind of disability are all eliminated, could he return and have full, equal, dignified, and safe access.

13  Wilfredo Torres Mass reserves the right to return at any time to Clínica Salus Guaynabo for any legal purpose, even it means submitting to discriminatory conditions, that he would have to experience problems that others with no disabilities would not face, or which represent a risk to his personal safety and physical being.

14  Since the construction and alterations history is not known for the property where Clínica Salus Guaynabo is located at this time, it is alleged: the property was built and/or altered after March 15, 2012; in the alternative, the property was build or altered after January 26, 1993; in the alternative, the property was built after January 26, 1993, but the defendant has the financial means for the property to comply with the most current construction codes.

[CERTIFIED TRANSLATION]    I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

### D. Violations to Title III of the Americans with Disabilities Act (ADA) by Clínica Las Americas Guaynabo, Inc.

15  Wilfredo Torres Mass is a person with a disability under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 et seq., due to a permanent neurological condition which limits him substantially in his lower body motor functions, which impedes him from walking, standing, bending down without assistance, and forces him to depend continuously on the use of a wheelchair for mobility.

16  The defendant, Clínicas Las Americas Guaynabo, Inc. is responsible for the public accommodation location known as Clínica Salus Guaynabo, which is open to the general public and, therefore, subject to the provisions of Title III of the ADA.

17  Said legislation imposes a clear and demandable obligation of eliminating architectural barriers when reasonably feasible and to ensure that the property, services, facilities, and advantages of the establishment are available in equal conditions, safety, and dignity for people with disabilities.

18  Notwithstanding this legal obligation, the defendant continues operating an establishment that contains multiple architectural barriers that impede or restrict significantly access, mobility, and the functional use of the space by Wilfredo Torres Mass. These barriers are not incidental or minor, rather they constitute physical obstacles that are incompatible with the fundamental principles of the ADA and the accessibility guidelines promulgated under its authority.

19  These barriers not only do not meet the technical requirements established by the Department of Justice in regulation 28 C.F.R. Part 36, rather that they also have a practical discriminatory effect, since they exclude Wilfredo Torres Mass from participating in equal conditions of the public experience provided by the Cllinica Salus Guaynabo. The lack of compliance with minimum accessibility standards makes the establishment in a physical space, and symbolically, excluding, in which persons with disabilities cannot exercise their right to social integration or the enjoyment of common services just like any other citizen.

20  Wilfredo Torres Mass has had direct and specific knowledge of these barriers, which have deterred his visits on multiple occasions, notwithstanding his legitimate and continuing interest to participate of the medical, therapeutic, and wellbeing services provided by Clínica Salus Guaynabo. These restrictions not only are uncomfortable and inconvenient, rather they constitute a tangible depriving of rights protected by federal law, deepening his marginalization and his exposure to dependence and exclusion.

21  The defendant has had the opportunity to remedy these barriers, but has opted to keep the establishment in conditions that clearly infringe on the mandate of Title III of the ADA. This inaction represents a continuing and sustained violation, that not only infringes on the individual rights of Wilfredo Torres Mass, rather it perpetuates a model of structural exclusion incompatible with national public policy on accessibility.

[CERTIFIED TRANSLATION]   I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

22  By maintaining these conditions, the defendant incurs in substantial violations to Title III of the ADA, which should be corrected through the imposition of adequate judicial remedies, including injunctions, structural repairs, and procedural sanctions, in order to restore the full, dignified, and equal access to the establishment.

### E. Wilfredo Torres Mass has standing

23  Title III of the Americans with Disabilities Act (ADA) establishes that no person will be discriminated due to disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. § 12182(a).

24  In the case of Wilfredo Torres Mass, the standing under Title III of the ADA is based on the discriminatory experiences lived during his visits to the establishment as well as the current deterrence experiencing to return. Congress expressly recognized in 42 U.S.C. § 12182(a)(1) that a person with disabilities cannot be demanded to continue repeated exposure to discriminatory conditions once the person has actual notice that the establishment does not comply with the accessibility requirements provided by law.

25  Standing under Title III of the Americans with Disabilities Act does not require that a person with disabilities expose him/her self to known architectural physical barriers to show a constitutional harm. This doctrine, known as deterrence-based standing, recognizes that just the frustration of not being able to access in equal conditions public spaces, combined with the honest intention of visiting them once the barriers have been removed, constitutes current and immediate damage which meets the requirements of Article III of the Constitution.

26  Thus, for purposes of standing, it should be taken into account that in case of <u>Betancourt v. Ingram Park Mall,</u> L.P., 735 F. Supp. 2d 587 (W.D. Tex. 2010), the Court of Appeals of the Eleventh Circuit ruled that the risk of suffering real harm is not speculative as long as the discriminatory barriers remain in place, the person continues being disabled and is "capable and willing" to visit the facility once it is compliant. In addition, any disable person who alleged being the denied the opportunity to visit or who currently feels deterred from visiting a public space which is violating Title III of the ADA, alleges a sufficient current injury to obtain a prospective remedy, which is precisely the one available under Title III of the ADA. this double aspect of the specific injury in the ADA cases recognizes the immediate impact of the direct discrimination as well as the long term impact and more insidious of the systematic barriers. By doing so, it shows the intention of Congress to provide a complete and efficient remedy against discrimination against persons with disabilities.

27  The fact itself that Wilfredo Torres Mass cannot enter Clincia Salus Guaynabo constitutes a clear harm, since he suffers emotional anguish as well as being deprived from enjoying an experience that others without disabilities enjoy.

28  In turn, the deterrent effect doctrine has been widely recognized by federal courts, including the First Circuit. As the court established in Disabled Americans for <u>Equal Access, Inc. v. Ferries del Caribe, Inc.</u>, 405 F. 3d 60, 64 (1st Cir. 2005): "A disable individual who is currently

[CERTIFIED TRANSLATION]   I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

deterred from patronizing a public accommodation due to the defendant's failure to comply with the Ada, and who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'actual or imminent' harm sufficient to confer standing."

29  This interpretation is fully coherent with the remedial purpose of the ADA. Requiring that a person with disabilities submit repeatedly to the humiliation, frustration, and physical risk of visiting an establishment that it is known through direct experience that it is not accessible would be contrary to the principle of human dignity that the federal law intends to safeguard.

### F. Wilfredo Torres Mass has suffered a concrete injury

30  Wilfredo Torres Mass has suffered a concrete and specific injury that transcends any mere technical violation of the statute. As the First Court establishes in <u>Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc.</u>, 405 F. 3d 60, 64 (1st Cir. 2005), "[a] disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA and who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA suffers actual or imminent harm sufficient to confer standing."

31  In the instant case, Wilfredo Torres Mass is not an "uninjured plaintiff" who is merely looking for abstract compliance with the law. On the contrary, he has experienced the following concrete and specific injuries:

> 31.1   Since June 18, 2025, Wilfredo Torres Mass has been deterred from visiting Clínica Salus Guaynabo due to his specific knowledge of multiple architectural barriers that impede his safe and dignified access. That determent is not hypothetical, rather it represents a current and continuous restriction of his rights.
>
> 31.2   The knowledge of the barriers has produced in Wilfredo Torres Mass real feelings of frustration, humiliation, and social exclusion. These express damages are recognized by the caselaw as concrete injuries that affect the inherent dignity of persons with disabilities.
>
> 31.3   Wilfredo Torres Mass is impeded from participating in the experience that is provided by Clínica Salus Guaynabo, such as the receiving of medical services, specialized consults, and wellbeing programs directed to the wholistic attention of health, depriving him of opportunities for community integration that are available for persons with disabilities.

32  Wilfredo Torres Mass meets the requirement of injury in fact established in <u>Lujan v. Defenders of Wildlife,</u> 504 U.S. 555, 560-61 (1992), because he has suffered:

> 32.1   An invasion of a legally protected interest, as is his right under the ADA to equal access to public accommodation locations, which is being harmed by the barriers in Clínica Salus Guaynabo.

[CERTIFIED TRANSLATION]    I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

  32.2  A concrete and specific injuries, since Wilfredo Torres Mass feels deterred from visiting Clínica Salus Guaynabo, affecting him in a personal and individual way, different from a generalized injury.

  32.3  A current and non-conjectural injury, given that his current knowledge of the barriers and the resulting deterrence constitutes an injury that occurs de facto in the present.

33 A direct causal connection exists between the architectural barriers kept by Clínica Salus Guaynabo and the damage suffered by Wilfredo Torres Mass. As established by the Eighth Circuit in <u>Kirchner v. ALBANIA, LLC</u>, No. 4:24-CV-206 HEA (E.D. Jan 15, 2025), the proximity of the plaintiff to the establishment and his history of interest in visiting similar establishments establishes a sufficient causal connection.

34 Wilfredo Torres Mass is not an uninjured plaintiff who is looking for mere technical compliance of a statute. He is a disabled person who has suffered a concrete constitutional harm, current and immediate as a result of his knowledge of the architectural barriers which impede his dignified and safe access to Clínica Salus Guaynabo, combined with his real wish and specific intention to visit the establishment once said barriers have been removed.

35 His case meet all the elements required for standing under Article III: (1) he has suffered the concrete invasion of his legally protected interest under the ADA; (2) a causal connection exists between the barriers kept by the defendant and his damages; and (3) the judicial remedies requested would redress his injury completely.

36 The deterrence-based standing doctrine recognizes that forcing people with disabilities to expose themselves to known barriers to establish standing would defeat the fundamental objectives of the ADA to eliminate the discrimination and integrate persons with disabilities into social and financial life. Wilfredo Torres Mass must not be forced to risk his safety and dignity to vindicate the rights that the federal law guarantees.

37 Thus, Wilfredo Torres Mass possesses full standing to request the remedies under Title III of the ADA that this action seeks.

  **G. The Futile Gesture Doctrine and its Application**

38 The ADA expressly incorporates the principle of futile gesture in 42 U.S.C. § 12188(a)(1), establishing that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions."

39 As the Ninth Circuit explains in <u>Pickern v. Holiday Quality Foods, Inc.</u>, 293 F.3d 1133, 1136-37 (9th Cir. 20020, "once a plaintiff has… become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." The court emphasized that his doctrine has its roots in <u>International Brotherhood of Teamsters v. United Sates</u>, 431 U.S. 324, 366

[CERTIFIED TRANSLATION]    I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

(1977), where the Supreme Court ruled that a person "does not need to expose to sure rejection or participate in a futile act to be a victim of illegal discrimination."

40  Demanding that Wilfredo Torres Mass enter Clínica Salus Guaynabo knowing that the architectural barriers compromise his safety and dignity would precisely constitute the type of "futile gesture" that the law rejects. His specific knowledge of the barriers, such as the deficiency in space to move inside the bathroom, aggravated by the door which opens to the inside and impedes a stable position of the wheelchair, provides him actual notice of the lack of compliance, meeting thus the requirements to invoke this protective doctrine.

### H. Distinction with the Testers Cases with no Concrete Damages

41  Different from the cases where the courts have found lack of standing, Wifredo Torres Mass possesses characteristics which clearly distinguish it from a professional "tester":

> 41.1    Wilfredo Torres Mass lives in Bayamón, at an approximate distance of 10 minutes driving from Clínica Salus Guaynabo. This geographic closeness establishes a real and practical connection between his home and the property, which strengthens the reasonability of his interest to attend the establishment as part of his daily routine.

> 41.2    Wilfredo's Torre Mass interest is legitimate and continuing, because he is motivated in receiving the medical, therapy, and wellbeing services that Clínica Salus Guaynabo provides. Said services result relevant for his health care and the preservation of his quality of life, which clearly distinguishes his intention to participate of a concrete offer and not of a mere verification visit.

> 41.3    Wilfredo Torres Mass keeps defined plans to return to Clínica Salus Guaynabo in the next months to receive medical attention and give continuity to his health care. The existence of these future plans shows how in effect is his link to the property and highlights that the barriers identified represent a current and real obstacle to his access.

42  The First Circuit has consistently recognized that standing does not require prior visits when knowledge exists of barriers and a real intention of patronage. In LaBonte v. Riverside Park Enterprises, Inc., No. 3:22-cv-30046-KAR (D. Mass. Jan. 7, 2025), the court explained that "Plaintiffs were not required to engage in the futile gestures of purchasing a probably expensive manual mobility aid that A.V. had no other use for and that Six Flags had no intention of allowing him to use in its water attractions to establish standing."

43  Likewise, in Disabled Americans for Equal Access, the First Circuit confirmed standing where the plaintiff "visited [defendant's] vessel on several occasions in 2001, 2002[,] and 2003" an alleged that "intends to return to the Defendant's place of public accommodation and cruise vessel to avail himself of the goods and services offered them." 405 F.3d at 64.

[CERTIFIED TRANSLATION]   I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

44  Continuing with above, the First Circuit, recognized standing based on prior visits and intention to return, establishing that "a real and immediate threat" of discrimination is sufficient to confer standing. 405 F.3d at 64. A recent persuasive decision of LaBonte: In this recent decision of 2025, the District of Massachusetts, and which takes into account the statements of diverse circuits and the Supreme Court, explained in detail for which the futile gesture doctrine allows standing without exposure to the physical barriers, pointing out that "Section 12188(a)(1) thus 'negates any requirement that a disabled person engage in a futile gesture to establish the existence of a discriminatory policy or practice' for purposes of bringing suit under Title III."

### III.   REMEDIES REQUESTED

1. Permanent Injunction pursuant to 42 U.S.C. § 12188(a)(2) that orders Clínica Las Americas Guaynabo, Inc.:

    1.1 Elaborate and file with the Court, within thirty days, a detailed plan to remove the barriers to comply with the 2010 ADA Standards for Accessible Design, showing how each modification will encompass the injuries that Wilfredo Torres Mass suffers and will allow his safe and dignified return.

    1.2 Execute said plan in a maximum term of one hundred eighty days, including:

    1.2.1   Reconfigure the bathroom stall to ensure a space to move freely at least 60 inches in diameter, allowing full turns of wheelchair users, pursuant to Section 305.3 of the ADA.

    1.2.2   Modify the bathroom access door so that it opens to the outside and install an automatic sliding door, eliminating the interference with the interior movement area, according to Section 404.2.4 of the ADA.

    1.2.3   Guarantee an area free of obstacles next to the side opening of the door, with a minimum of 60 inches in depth and 18 inches of lateral space next to the lock, according to Section 404.2.4 of the ADA.

    1.2.4   Adjust the opening pressure of the door so that it does not exceed 5 pounds of force (lbf), in compliance with Section 404.2.9 of the ADA.

    1.2.5   Remove any loose or fixed object, including trashcans or furniture, which interferes with the movement and transfer space to the toilet or sink, guaranteeing the required clear floor space.

[CERTIFIED TRANSLATION]   I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

    1.2.6    Relocate the wastebasket outside the movement perimeter or substitute it for a built-in unit which does not invade the turning space or the toilet approach area.

    1.2.7    Reinstate the toilet paper dispenser so it is placed between 7 and 9 inches in front of the front frame of the toilet and at a height of between 15 and 48 inches over the finished floor, according to Section 604.7 of the ADA.

    1.2.8    Guarantee that the toilet paper dispenser does not interfere with the functional use of the support railings or with the toilet approach space.

    1.2.9    Relocate the soap dispensers and hand drying equipment at a maximum height of 48 inches over the floor level and in a position accessible without obstructions, according to Section 308.2 of the ADA.

    1.2.10    Reinstate the bathroom mirror that the lower frame of the reflection are does not go over 40 inches in height over the finished floor, according to Section 603.3 of the ADA.

1.3 Structural policies and practices Order

    1.3.1    Adopt and publish an equal access policy which prohibits practices that deter a person with reduced mobility.

    1.3.2    Train all the personnel, within sixty days, on adequate interaction with clients who use mobility assistance and on the rights conferred by Title III, documenting the assistance and preserving record for five years.

    1.3.3    Designate an internal coordinator for accessibility responsible for receiving and resolving complaints, with the obligation to send to the Court a semi-annual report during two years.

2    Declaratory order that establishes that the conditions described violate Title III of the ADA and that the removal of barriers is necessary to cure the damage of frustration, exclusion, and determent experienced by Wilfredo Torres Mass.

3    Continuing judicial supervision: jurisdiction retention by to Court to:

    3.1 Review the quarterly improvement reports from the defendant.
    3.2 Perform in situ inspection, if necessary, to very compliance.

[CERTIFIED TRANSLATION]   I, Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me.

    3.3 Impose civil or coercive sanctions for each day of non-compliance once the set term has expired.

4   Reasonable attorney fees, costs, and expenses according to 42 U.S.C. § 12205, given the need for this litigation to protect the equal access right and to incentivize future compliance.

5   Any other legal or equity remedy that the Court deems fair and necessary to ensure the full elimination of the barriers and the full, safe, and equal enjoyment of conditions of the establishment by Wilfredo Torres Mass and the disabled community.

**RESPECTFULLY SUBMITTED.**

**Dated:** August 25, 2025

VELEZ LAW GROUP LLC
Civil Rights Division

s/José Carlos Vélez Colón
AR 18913

1449 S Michigan Ave STE 13234
Chicago, Il 60605
E:      vlg@velezlawgroup.com
C:      (787)-422-1881

**ATTORNEY FOR THE PLAINTIFF**